UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURRELL CLARK,

               Plaintiff,

v.

RENATA PATTON, *et al.*,

               Defendants.
_____/

Civil Action No. 23-11574

Mark A. Goldsmith
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 22, 31), AND TO *SUA SPONTE* DISMISS PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

This is a prisoner civil rights case, commenced by plaintiff Burrell Clark ("Clark"), pursuant to 42 U.S.C. § 1983. Clark is a prisoner under the custody of the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility, and he names as defendants several MDOC employees: Corrections Program Coordinator Renata Patton; Qualified Mental Health Professional Andrea Owens; and Lieutenant Michael McCollough ("Defendants"). Clark alleges that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution by retaliating against him and harassing him after he threatened to file certain grievances. (ECF Nos. 1, 7). The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 17).

On April 12, 2024, defendants McCollough and Patton filed a Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 22), which was fully briefed (ECF Nos.

24, 25, 26).[1][2]  On June 17, 2024, defendant Owens filed a Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 31) for the same reasons set forth in McCollough's and Patton's summary judgment motion, which was fully also fully briefed (ECF Nos. 34, 35).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants McCollough's and Patton's Motion for Summary Judgment **(ECF No. 22)** be **DENIED IN PART**, Defendant Owens' Motion for Summary Judgment **(ECF No. 31)** be **GRANTED**, and Clark's other claims against Patton and his claims against McCollough be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.     REPORT

### A.      Background

---

[1] Clark filed a sur-reply without seeking leave of Court, in violation of the Federal Rules of Civil Procedure and the Local Rules.  (ECF No. 26).  Consequently, Defendants filed a Motion to Strike Clark's Sur-Reply (ECF No. 30).  However, in light of Clark's *pro se* status, and for the sake of completeness, the Court will consider this filing in its analysis.  Accordingly, Defendants' motion to strike **(ECF No. 30)** is **DENIED**.

[2] In ECF No. 23, Clark filed a "Motion to Correct" a "clerical mistake he made in his affidavit" regarding an inaccurate date of filing as to one of his prior lawsuits in his response to Defendants' summary judgment motion.  (ECF No. 23).  For good cause shown, Clark's motion to correct **(ECF No. 23)** is **GRANTED.**

Clark is an MDOC prisoner who at all relevant times has been confined at the Macomb Correctional Facility ("MRF").  He brings this § 1983 civil rights action based on alleged violations of his First, Fifth, and Fourteenth Amendment rights.  In his complaint, Clark alleges that, on July 29, 2021, Patton called him to MRF's school building "to be reclassified," whereupon she "unreasonably ordered [him] to sign a reclassification form," "used harassment, threats, and intimidating abusive language," and "continued pushing and coercing [him] to sign" despite his disagreement to do so.  (ECF No. 1, PageID.7).  When Clark warned Patton that he "will file a grievance with [her] supervisor," she replied, "I'll write you a ticket first."  (*Id.*, PageID.8).

Shortly thereafter, Programs Director Visconti came to speak with Clark, and while they were having a conversation, Patton "rudely interrupted [] by unreasonably harassing" him and "aggressively" yelled, "[C]lark leave the room."  (*Id.*).  Clark responded, "I will not be threatened, harassed, or intimidated by you."  (*Id.*).  Clark alleges that that same day, Patton "intentionally & unreasonably wrote a false misconduct" for "creating a disturbance" and "disobeying a direct order."  (*Id.*).  Clark alleges that Patton wrote him the false misconduct report to "retaliate for the reclassification situation she created and [his] disagree[ment] to sign it," which amounted to a "verbal lynching and violated MDOC's P.D. 03.02.130(J)(6)&(L)."  (*Id.*, PageID.8-9).  He alleges that Patton's behavior "also violated MDOC's Employee Handbook Work Rule No. 5" as "she was motivated by prior grievance and a lawsuit [he] filed against her on 10-20-20, 20:21-cv-12894."  (*Id.*, PageID.9).  He alleges that he "wrote 2 grievances on [P]atton," one on "7-29-21" and the other on "8-3-21" after kiting her.  (*Id.*).

Clark alleges that, on July 30, 2021, his therapist, Owens, came to conduct a "Roberta R." mental health report on him, but that this "wasn't done in good faith" and was "rooted from a deep urge to punish [him] and conspire with [Patton] in a shared plan to simultaneously retaliate by attacking [his] mental health." (*Id.*). He alleges that Owens "unprofessionally abused her authority by asking [him] to sign the documentary release and the ticket would go away," which caused him "undue mental anguish and emotional harm." (*Id.*). Clark alleges that he "wrote a medical kite, to record that suffering." (*Id.*). He alleges that Patton and Owens conspired to unjustly issue him a misconduct ticket and attack his mental health and discredit him. (*Id.*, PageID.9-10).

Clark further alleges that, on August 7, 2021, McCollough held a hearing on the false misconduct report issued by Patton. (*Id.*, PageID.10). During the hearing, Clark told McCollough that "this is in retaliation for my lawsuit and grievances I filed against [Patton] and voicing my opinion of her abuse towards me." (*Id.*). McCollough allegedly responded that he was "finding everyone guilty that day because prisoners stick together and C/O's do to[o]," and McCollough then "dishonestly wrote in his misconduct hearing report" that Clark "did not want to sign reclassification form." (*Id.*). Clark alleges that, as a result of McCollough's "dishonest and misleading hearing report," he ended up being punished by a loss of privileges, use of the common areas, and recreation for four days. (*Id.*). He alleges that McCollough "never gave [him] a copy of [his] responses [that he] requested to be placed in the record during [the] hearing," and he filed a "misconduct appeal" which he "placed in the prison internal mailing system" that "went unresponded to, even after the 30 days had passed, in violation of P.D. 03.03.105 (UUU)." (*Id.*, PageID.11).

4

Based on the above allegations, Clark sues Defendants in their individual and official capacities for violations of his First, Fifth, and Fourteenth Amendment rights because: (1) Patton acted in a harassing, threatening, and intimidating manner, and retaliated against him by filing a false misconduct report after he engaged in protected conduct; (2) Owens conspired with Patton to retaliate against him by abusing her authority to conduct a "Roberta R." mental health report; and (3) McCollough acted "with the denial of [Clark's] procedural due process rights and equal protection under the law when he joined in on retaliating against [him]."  (*Id.*, PageID.4, 9).  Clark seeks money damages from the named Defendants, and asks the Court to "order prison officials to completely remove the unjustified false misconduct [ticket] that was issued to [him] in retaliation . . ." (*Id.*, PageID.16).

Defendants now move for summary judgment on Clark's claims against them, arguing that Clark failed to properly exhaust his administrative remedies before filing the instant lawsuit.

### B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's

evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced,

and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 22-2, PageID.127). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that, if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a

Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ C).

### *Clark Raises a Material Factual Question as to Whether He Exhausted his Retaliatory-Misconduct-Ticket Claim against Patton*

In his complaint, Clark claims that Patton issued him a false misconduct ticket in retaliation for his refusing to sign a reclassification form and informing her that he would file a grievance against her.[3]  Defendants move for summary judgment on Clark's claim against Patton, arguing that he failed to exhaust any claims based on a retaliatory misconduct ticket.

Although the Policy provides that prisoners must pursue most grievances through the three-step grievance process before bringing those claims in federal court, it also

---

[3] To the extent that Clark raises a First Amendment claim against Patton for "abruptly" interrupting him and stating, "Mr. Clark leave the room" in a "very hostile, aggressive, threatening, and intimidating manner, that drew all attention in the room on [him]" (ECF No. 1, PageID.19), such claim should be dismissed.  The law is clear that a prison official's mere use of alleged harassing or degrading language does not constitute a sufficiently adverse action for purposes of a First Amendment retaliation claim.  *See, e.g.*, *Sublett v. McAlister*, 2020 WL 8614219, at *3 (6th Cir. Oct. 9, 2020) ("Verbal abuse does not constitute an adverse action of constitutional significance within the meaning of a First Amendment retaliation claim."); *Lippett v. Duncan*, 2023 WL 2555547, at *4 (E.D. Mich. Mar. 17, 2023) (finding "Plaintiff's retaliation claim arising from alleged verbal harassment and minor threats" were "not adverse actions giving rise to a retaliation claim."); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("An inmate has no right to be free from verbal abuse, [] and minor threats do not rise to the level of a constitutional violation."); *Miles v. State of Michigan, et al.*, 2023 WL 5345242, at *6 (W.D. Mich. Aug. 21, 2023) ("The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.").  Thus, even liberally construed, Clark's First Amendment claim premised on Patton's alleged threatening and combative language and/or tone should be dismissed under 28 U.S.C. § 1915(e)(2)(B).  28 U.S.C. § 1915(e)(2)(B) (stating that, in civil actions brought by prisoners, the court "shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous . . . [or] fails to state a claim on which relief may be granted").

provides that certain grievances are not subject to the three-step grievance process and "shall be rejected by the Grievance Coordinator," including when a prisoner "is grieving a decision made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing)." (ECF No. 22-2, PageID.129, ¶ J(11)). For these types of grievances, the Policy states that "[p]risoners are provided an appeal process for Class II and Class III decisions pursuant to PD 03.03.105 'Prisoner Discipline.'" (*Id.*). Thus, courts have recognized that misconduct reports are non-grievable, and "the only avenue for challenging [] misconduct reports is a hearing." *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011); *see also Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019).

Relevant here, the MDOC's Prisoner Discipline Policy, PD 03.03.105, provides that a prisoner found guilty of a Class II misconduct after a hearing on the matter "may file an appeal of the facility hearing officer's decision" via a "Class II and III Misconduct Appeal form," which "must be filed within 15 days after receipt of the hearing officer's written decision." (ECF No. 22-5, PageID.179, ¶ UUU). "A response shall be provided in writing to an appeal filed pursuant to Paragraph UUU . . . within 30 calendar days after receipt of the appeal." (*Id.* at ¶ WWW).

In this case, it is undisputed that Clark raised the issue of retaliation at the hearing on his misconduct ticket. Specifically, on July 29, 2021, Patton wrote Clark a misconduct ticket for "Creating Disturbance, Disobeying a Direct Order." (ECF No. 22-4,

PageID.166).[4]  McCollough presided over a hearing on the misconduct ticket on August 7,

2021, after which he wrote a "Class II and III Misconduct Hearing Report." (ECF No. 22-

4, PageID.167). The hearing report states that, during the hearing, Clark entered a plea of

not guilty and "*[s]tated the misconduct was retaliation*, regarding a grievance against CPC

Patton" because Clark "stated he did not want to sign reclassification form and was not

even in the classroom of building 300 at 1320 hours." (ECF No. 22-4, PageID.167)

(emphasis added).[5]

Defendants now argue that Clark failed to exhaust his retaliatory-misconduct-ticket

claim because he failed to pursue an *appeal* of the hearing decision. (ECF No. 22,

PageID.122). In his response, Clark asserts that he "filed a Misconduct Appeal that he

placed in the mail on 8-16-21, to Deputy Warden Ricumst[r]ict & ADW Greason that

wasn't responded to even after 30 days had passed pursuant to MDOC's PD-

03.03.105(UUU)." (ECF No. 24, PageID.203). Defendants reply that "Clark does not

---

[4] The misconduct ticket states that, while Patton was conducting a program reclassification with six prisoners, she asked Clark to approach the table to review his program classification report, but that he raised his voice at her and refused to the sign the report. (ECF No. 22-4, PageID.166). The ticket noted that, even after Patton "repeatedly acknowledged his refusal to sign," Clark kept speaking in a voice "loud enough for the other prisoners to stop what they were doing," which caused her alarm and to stop the reclassification process. (*Id.*). Because Clark kept speaking in a "very loud voice" and ignoring her orders to stop disrupting the classification process with the rest of the prisoners in the room, Patton had to ask Clark at least two times to stop yelling and be redirected out of the room by CPC Visconti so that Patton could continue the reclassification process. (*Id.*).

[5] McCollough ultimately found Clark guilty of the misconduct "[b]ased on camera review and response from Ms. Visconti," as well as "sufficient evidence based on the reporting staff members account and Ms. Visconti that the order from CPC Patton was not immediately followed by Prisoner Clark" and "that his loud tone disrupted the class as prisoner Clark was asked to step outside." (ECF No. 22-4, PageID.167).

offer a copy of the appeal he allegedly submitted," and "[a]s such, there is no way to evaluate whether his appeal properly raised the issue of retaliation so that, if it were filed, it would have exhausted his claims arising out of the misconduct ticket."  (ECF No. 25, PageID.218).  Defendants' arguments, however, are belied by the record evidence, which includes a copy of the misconduct appeal form that Clark claims he submitted.

Specifically, attached to Clark's complaint is a copy of a "Class II and Class III Misconduct Appeal" form, in which Clark wrote that it was "sent in mail on 8-16-21 btwn 3-3:15 pm."  (ECF No. 1, PageID.18).  The form also reflects that it was being submitted to appeal the findings of the misconduct hearing held on "8-7-21," and that the basis for his appeal was that "Lt. McCollough[] improperly recorded my statement that I asked to be placed on record as my response, which stated, and I quote, 'This is in retaliation for my lawsuit and grievances filed against [Patton], and voicing my opinion of her abuse towards me.'"  (ECF No. 1, PageID.18).

Defendants do not dispute the document's authenticity, and appear to have simply overlooked it.  At any rate, the record is clear that Clark has submitted evidence that, viewed in the light most favorable to him, shows he filed a timely misconduct appeal of the hearing decision.  He also declared under penalty of perjury that he "filed a Misconduct Appeal that he placed in the mail on 8-16-21, to Deputy Warden Ricumst[r]ict & ADW Greason that wasn't responded to even after 30 days had passed pursuant to MDOC's PD-03.03.105(UUU)."  (ECF No. 24, PageID.203, 206).[6]  Viewing this evidence together,

---

[6] To the extent Clark's constitutional claims are based on the alleged violation of an MDOC policy, those claims fail as a matter of law and should be dismissed, 28 U.S.C. § 1915(e)(2)(B), because

Clark has shown the existence of a material factual question as to whether he properly exhausted his First Amendment retaliation claim against Patton by mailing a misconduct appeal form after the hearing decision.  Accordingly, Patton is not entitled to summary judgment on the basis of exhaustion as to Clark's retaliatory-misconduct-ticket claim against her.

### Clark Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted His Claims against Owens

Next, Clark claims that, on July 30, 2021, Owens conducted a Roberta R. mental health report on him, which "wasn't done in good faith" and "rooted from a deep urge to punish [him] and conspire with [Patton] in a shared plan to simultaneously retaliate by attacking [his] mental health."  (ECF No. 1, PageID.9).  Defendants move for summary judgment on that claim, arguing that Clark did not properly exhaust his claims against Owens through the three-step grievance process.  (ECF No. 31, PageID.263).  Clark responds that he exhausted his claim against Owens via Grievance MRF-21-08-1706-17B (the "17B Grievance"), which "mentions Owens['] name."  (ECF No. 34, PageID.277-79).

A copy of the 17B Grievance states, in full, as follows:

> On 7-30-21, Therapist A. Owens came to have a session with me at 3:15 pm, this was brought about by, [] Patton, who has <u>not</u> acted in good faith, when she elected to submit a Roberta R. Report about me, to A. Owens.  Patton[']s actions are pre-textual, rooted from prior grievances and pending U.S. Federal Court proceedings.  She continually

---

prison officials are not required to follow their own procedural statutes and rules as a matter of federal due process.  *See, e.g., Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) ("the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation."); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir.1994) (prison regulations "do not create an independent federal due process liberty interest or right in the prisoner.").

> antagonizes grievant, and conspires with others attacking his Mental Health in an attempt to discredit him, a clear violation of Employee Handbook Rule #1 see P.D. 04.05.100, P.D. 04.05.122, also Rule #3 see P.D. 02.03.109. (CPC) Patton is using his Mental Health along with Administration tactics to impose severe punishment upon grievant, which serves no purpose, other than self[-]gratifying means.

(ECF No. 1, PageID.23) (emphasis in original).

Even viewing the 17B Grievance in the light most favorable to Clark, it cannot be construed as raising a claim *against Owens*. While the grievance does refer to Owens, in context, it states that Owens merely received *Patton's* bad-faith submission of a Roberta R. mental health report about Clark, and that it was *Patton* who continues to antagonize him and use his mental health to punish him. Indeed, under the grievance's prompt asking, "What attempt did you make to resolve this issue prior to writing this grievance?", Clark expressly answered, "I sent a letter to (CPC) **Patton <u>who is the subject of grievance</u>**, w/o a response." (ECF No. 1, PageID.23) (emphasis added).

The other salient grievance documents in the record confirm that the subject of the 17B Grievance was Patton, and not Owens. For instance, the Step I Grievance Response Supplemental Form summarizes the MDOC's investigation into the 17B-Grievance, which focuses solely on a complaint against *Patton*:

> Grievant states that CPC Patton did not act in good faith and submitted a Roberta R about him to OPT. Grievant states her actions attacked him mental health. . . .
>
> Grievant was interviewed on 9/30/21 during rounds. He refused to make any additional comments that stated he is processing the situation further. CPC Patton was interviewed and stated that during a meeting with prisoner Clark he displayed very odd behavior, appeared anxious, irate and agitated. His speech was very fast and his voice was loud. Prisoner seemed confused about the content of the meeting. Grievant

13

was seen by OPT Mental Health. . . .

Grievance denied.  I find that staff acted in good faith and within the
scope of policy. Staff observed a behavior that warranted a mental
health referral, the referral was submitted and a mental health
assessment was completed by a QMHP.

(ECF No. 1, PageID.24).

Moreover, in Clark's Step II appeal, he does not mention Owens at all, and instead
again specifically complains only about Patton: "Grievant submits that **Ms. Patton[']s**
description of grievant[']s alleged behavio[]r is a common racist misnomer ascribed to any
Black person who speaks up in protest of white supremacy or abuse, and is an attempt to
destroy my credibility by assassinating my character.  Furthermore, **Ms. Patton** is the one
who's odd, anxious, irate, and predatorial behavio[]r was displayed upon grievant, as a so
called MDOC professional authority figure.  I request she receive a mental exam." (*Id.*,
PageID.27) (emphasis added).  His Step III appeal simply states, "All issues and parties
remain the same," which, based on the above, can only be reasonably construed as raising
a grievance against Patton.  (*Id.*).

In sum, the 17B Grievance cannot be fairly read as raising a claim against Owens.
Thus, Clark has failed to raise a material factual question as to whether the 17B Grievance
exhausted his claim against Owens in this instant lawsuit.   Accordingly, summary
judgment should be granted in favor of Owens on Clark's claims against her.

### Clark's Claims Against McCollough Should be Dismissed Pursuant to 28 U.S.C. § 1915(e)(2)(B) because They are Barred by Absolute Immunity

Finally, Clark claims that McCollough joined Patton and Owens in "retaliating
against" him by writing a "dishonest and misleading hearing report" because Clark "did

14

not want to sign [the] reclassification form." (ECF No. 1, PageID.10-11). While McCollough moves for summary judgment on the basis of exhaustion, the Court need not address that issue, as it finds that Clark's claims against McCollough are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Specifically, 28 U.S.C. § 1915(e)(2)(B) provides that in civil actions brought by prisoners, the court "shall dismiss the case at any time if the court determines that . . . the action or appeal—(i) is frivolous ...; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) & (e)(2)(B). In applying § 1915(e)(2)(B) to a similar case, the Sixth Circuit previously explained:

> In *Shelly v. Johnson,* 849 F.2d 228, 229–30 (6th Cir.1988) (per curiam), this Court held that Michigan prison hearing officers are entitled to "absolute immunity from liability with respect to their judicial acts." The doctrine of judicial immunity protects judicial officers from suits seeking money damages and applies even in the face of "allegations of bad faith or malice." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). Judicial immunity is overcome in only two circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12, 112 S.Ct. 286 (citations omitted).
>
> Here, Harris–Spicer was clearly acting in her "judicial" capacity— presiding over a hearing and authoring a hearing report. The Supreme Court has held that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Id.* at 12, 112 S.Ct. 286 (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (alteration in original)). Although Reynolds–Bey alleges that prison officials believed Harris–Spicer was "acting on her own" when she alleged that Reynolds–Bey was trying to

escape, the record indicates that Harris–Spicer was acting in her official role as a hearing officer, and was well within her jurisdiction to make a determination on the Major Misconduct Report and to include in her hearing report any allegations or factual findings she thought relevant. []

Even if Harris–Spicer's allegation was made in bad faith, she is still entitled to absolute immunity. *See Mireles,* 502 U.S. at 11, 112 S.Ct. 286; *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly...."). The lack-of-jurisdiction exception to judicial immunity is narrow, and Reynolds–Bey fails to demonstrate that Harris–Spicer acted in the "clear absence of all jurisdiction" here. *Stump,* 435 U.S. at 357, 98 S.Ct. 1099; *see also id.* at 356, 98 S.Ct. 1099 ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."). Therefore, Harris–Spicer is entitled to absolute immunity from suit. Moreover, the claim against Harris–Spicer is not properly exhausted because the grievance concerning her actions was untimely.

*Reynolds-Bey v. Harris*, 428 F. App'x 493, 498-99 (6th Cir. 2011).

Like the hearing officer in *Reynolds-Bey*, here, McCollough "was clearly acting in [his] 'judicial' capacity—presiding over a hearing and authoring a hearing report." *Id.* at 498. Clark's allegations that McCollough acted "dishonestly," with a retaliatory motive, or in bad faith do not change the immunity analysis. *See Pierson*, 386 U.S. at 554 ("This immunity applies even when the judge is accused of acting maliciously and corruptly...."). Thus, McCollough is entitled to absolute immunity from suit, and Clark's claim against him should be dismissed. *See Carlton v. Baird*, 72 F. App'x 367, 368 (6th Cir.2003) ("[W]e conclude that the district court was required to dismiss this complaint because it sought monetary relief from a defendant who is entitled to absolute immunity. 28 U.S.C. §§ 1915(e)(2)(B)(iii).... Judges are absolutely immune from suit for monetary damages.... and the absolute immunity of the defendant therefore compelled dismissal.").

16

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that:

- Defendants McCollough's and Patton's Motion for Summary Judgment **(ECF No. 22)** be **DENIED IN PART** as to Clark's retaliatory-misconduct-ticket claims against Patton;

- Defendant Owens' Motion for Summary Judgment **(ECF No. 31)** be **GRANTED**;

- Clark's claims against Patton based on harassing or abusive language and on violations of MDOC policy, and his claims against McCollough, be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

Should this Report and Recommendation be adopted, the only remaining claim in this case will be Clark's First Amendment claim against Patton based on the issuance of an alleged retaliatory misconduct ticket.


Dated: November 26, 2024                s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 26, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager